UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SARAH B. W., formerly SARAH B. E.,

                             Plaintiff,

v.                                                                    8:21-cv-50 (TWD)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                             Defendant.
_____

APPEARANCES:                                OF COUNSEL:

SCHNEIDER & PALCSIK                          MARK A. SCHNEIDER, ESQ.
  *Counsel for Plaintiff*
57 Court Street
Plattsburgh, NY 12901

SOCIAL SECURITY ADMINISTRATION              HEETANO SHAMSOONDAR, ESQ.
OFFICE OF PROGRAM LITIGATION
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, MD 21235

SOCIAL SECURITY ADMINISTRATION              KEVIN MICHAEL PARRINGTON, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

    Sarah B. W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Commissioner of Social Security's ("Commissioner") denial of her request

for Supplemental Security Income.  (Dkt. No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties

consented to the disposition of this case by the undersigned.  (Dkt. No. 5.)  Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c) in accordance with General Order 18.  (Dkt. Nos. 4, 17, 22.)  For the reasons set forth below, Plaintiff's motion is granted, the Commissioner's decision is vacated, and the matter is remanded for further administrative proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff filed for Supplemental Security Income on April 16, 2019, claiming an onset date of September 12, 2012, and disability due to type 1 diabetes, hypothyroidism, anxiety, depression, mood disorder, explosive disorder, obesity, and social anxiety.  (T. at 121, 137, 277.[1])  The Commissioner denied Plaintiff's initial application, and Plaintiff requested reconsideration.  *See id.* at 157, 169.  On reconsideration, Plaintiff claimed her conditions had worsened and she had developed two additional impairments: schizophrenia and attention-deficit/hyperactivity disorder ("ADHD").  *See id.* at 304.

The Commissioner denied relief on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 176, 185.  ALJ Brian LeCours held a hearing on April 3, 2020, and Plaintiff testified along with Vocational Expert Cherie Plante.  *Id.* at 32-64.  ALJ LeCours subsequently denied Plaintiff's claim, and the Appeals Council denied her request for reconsideration.  *See id.* at 1-3, 16-25.  Plaintiff now seeks this Court's review. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 11.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Page references to other documents identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

## II.    STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Brennan v. Colvin*, No. 13-CV-6338 (AJN) (RLE), 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2] "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied. *Johnson*, 817 F.2d at 986; *see also Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) ("Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.").

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence. *Tejada*, 167 F.3d at 773; *Johnson*, 817 F.2d at 985. "Substantial evidence means more than a mere scintilla." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the ALJ's finding as to any fact is supported by substantial evidence, it

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983). Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).  In a similar

vein, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022).  "The court,

however, will not defer to the Commissioner's determination if it is the product of legal

error."  *Hopson v. Comm'r of Soc. Sec.*, No. 20-CV-6528 (LTS) (RWL), 2022 WL 1749930, at

*2 (S.D.N.Y. Jan. 12, 2022).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial

evidence inquiry, remand may be appropriate.  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir.

2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate

where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d

Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or

persuasive value of witness testimony, *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117,

130-31 (2d Cir. 2008), or explain his reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d

at 39.

## III.    DISCUSSION

Plaintiff was born in January of 1998, attended special education classes throughout her

schooling, dropped out of school after eleventh grade, and has never held a full-time job.  (T. at

38-39, 43, 244, 278, 336-43.)  She was diagnosed with type 1 diabetes at age three and has been

diagnosed with various other impairments in recent years, including: adjustment disorder,

various learning disorders (i.e., developmental disorder, developmental dyslexia, developmental

reading disorder, developmental arithmetic disorder, borderline intellectual functioning),

hypothyroidism, social anxiety disorder (i.e., social phobia), depressive disorder, insomnia (i.e.,

sleep disorder), and ADHD.  *Id.* at 269, 365, 373, 415, 418, 420-21, 427, 433-66, 536-37, 598, 600-601, 618, 634, 684.

Plaintiff lives with her mother, whom she relies on to schedule her medical appointments and give her reminders of daily living, including eating, cleaning, bathing, doing laundry, and taking her medications.  *See id.* at 45, 54, 260-63, 271-72.  Plaintiff spends most of her day in her room sleeping, reading, or playing video games.  *See id.* at 45, 263, 272-73.  She can make simple meals for herself, take care of her pets, and go on walks alone a couple times a week.  *See id.* at 49, 51, 260-62.  She does not get along well with family members (other than her mother), and recently discontinued her relationship with the only friend she had.  *See id.* at 48, 262, 269-71.  Plaintiff can read and do simple math, but struggles to write.  *See id.* at 40, 263, 373.

The ALJ concluded Plaintiff had anxiety disorder, depressive disorder, and personality disorder, but was not disabled within the meaning of the Social Security Act because she was capable of performing jobs that existed in significant numbers in the national economy.  *Id.* at 18, 24-25.)  Specifically, the ALJ concluded Plaintiff was not disabled since her alleged onset date, April 16, 2019, because she could work as a cleaner, a kitchen helper, a router, and an office helper.  *Id.* at 25.[3]

Plaintiff claims the ALJ committed three errors warranting remand.  (*See* Dkt. No. 18.)  First, Plaintiff claims the ALJ erred in concluding she only had three severe impairments.  *See id.*

---

[3] The relevant period for Plaintiff's Supplemental Security Income claim runs from April 16, 2019, the date she applied for those benefits, to April 16, 2020, the date of the ALJ's decision.  *See* 20 C.F.R. §§ 416.330, 416.335; *see, e.g.*, *Otero v. Kijakasi*, No. 20-CV-7612 (VEC) (DF), 2022 WL 1051164, at *2 (S.D.N.Y. Mar. 1, 2022), *report and recommendation adopted*, 2022 WL 951061 (S.D.N.Y. Mar. 30, 2022); *Segarra v. Comm'r of Soc. Sec.*, No. 20-CV-5801 (PGG) (DF), 2022 WL 1051155, at *2 (S.D.N.Y. Feb. 17, 2022), *report and recommendation adopted,* 2022 WL 669877 (S.D.N.Y. Mar. 7, 2022); *Juan T. v. Kijakazi*, No. 3:20-CV-01869 (SALM), 2021 WL 4947331, at *4 (D. Conn. Oct. 25, 2021) (Merriam, District Judge).

at 20-22.  Second, Plaintiff claims the ALJ improperly evaluated the medical opinion evidence.
*See id.* at 15-20.  Third, Plaintiff claims the ALJ improperly evaluated evidence of her
symptoms.  *See id.* at 22-27.  Plaintiff also urges this Court to consider a subsequent favorable
decision issued by the Commissioner.  *See id.* at 27-28.

The Commissioner contends this Court need not consider the subsequent decision
granting benefits because it is not new evidence, it is immaterial, and it relies on evidence
outside the relevant time period.  (*See* Dkt. No. 22 at 15-19.)  The Commissioner further
contends any error in the ALJ's step-two determination was harmless because the ALJ
considered all of Plaintiff's impairments and accompanying symptoms in his residual functional
capacity ("RFC") determination.  *See id.* at 11-13.  Finally, the Commissioner argues the ALJ
properly evaluated the medical opinion evidence and evidence of Plaintiff's symptoms.  *See id.*
at 8-11, 13-15.

For the following reasons, the Court declines to consider the Commissioner's subsequent
decision granting benefits, *see Caron v. Colvin*, 600 F. App'x 43, 43-44 (2d Cir. 2015), and
concludes any error the ALJ made at step two was harmless because he considered all of
Plaintiff's impairments and symptoms in his RFC determination, *see Reices-Colon v. Astrue*, 523
F. App'x 796, 798 (2d Cir. 2013).  However, the Court concludes the ALJ's evaluation of the
medical opinion evidence was flawed.  *See* 20 C.F.R. §§ 416.920c(b)(2), (c)(1)-(2).  Remand is
accordingly warranted.  *See, e.g.*, *Jackson v. Kijakazi*, No. 20-CV-7476 (JLC), 2022 WL 620046,
at *18-20 (S.D.N.Y. Mar. 3, 2022) (remanding due to errors in evaluating medical opinion
evidence); *Christopher B. v. Saul*, No. 8:19-CV-00905 (BKS), 2020 WL 5587266, at *17-20
(N.D.N.Y. Sept. 18, 2020) (remanding due to errors in evaluating medical opinion evidence and
evidence of the claimant's symptoms).

A.      **Subsequent Favorable Decision**

At the outset, the undersigned declines Plaintiff's invitation to consider a subsequent favorable decision as material evidence in this case.  *See Caron*, 600 F. App'x at 43-44; *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014); *see generally* 42 U.S.C. § 405(g).  The subsequent decision is not evidence, and it has no bearing on the relevant time period at issue here.  *See, e.g.*, *Hairston-Scott v. Comm'r of Soc. Sec.*, No. 20-758, 2021 WL 3777581, at *2 (2d Cir. Aug. 26, 2021) (concluding the district court did not need to consider a subsequent favorable decision because it was "not relevant to the claimant's condition during the time period for which benefits were denied and could not have influenced the Commissioner's decision pertaining to an earlier time period."); *Caron*, 600 F. App'x at 44 (concluding a subsequent favorable decision was not evidence and not relevant to the claimant's condition during time period at issue); *Lopez v. Kijakazi*, No. 1:20-CV-07912 (MKV) (SDA), 2022 WL 832028, at *2 (S.D.N.Y. Mar. 21, 2022) ("Remand on the grounds of the subsequent favorable decision is therefore inappropriate because the later decision with respect to a subsequent time period is not material evidence with respect to the earlier application.").

After the Commissioner denied the claim at issue here, Plaintiff filed another claim on January 12, 2021.  (*See* Dkt. No. 18 at 3.)  On June 8, 2021, the Commissioner issued a favorable decision on that claim, concluding "[a]s of January 2021 [Plaintiff] met all the rules to be eligible for SSI based on being disabled."  *Id.*  That subsequent favorable decision is based on medical records documenting Plaintiff's condition *after* the ALJ issued his decision in this case.  *See id.* at 30, 32, 41, 47, 49, 55, 79; *see also* Dkt. No. 19 at 36, 41, 50, 60, 70.  Plaintiff urges this Court to consider the subsequent favorable decision as evidence the ALJ's denial of the claim at issue here was flawed.  (*See* Dkt. No. 17 at 27-28.)

"A federal court will consider new evidence only to determine whether it provides a basis for remand to the Commissioner." *Hairston-Scott*, 2021 WL 3777581, at *2.  Sentence six of 42 U.S.C. § 405(g) instructs that such a basis exists "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *See* 42 U.S.C. § 405(g); *see generally Hairston-Scott*, 2021 WL 3777581, at *2.  "Thus, the Plaintiff must demonstrate that: (1) the evidence is new; (2) the evidence is material; and (3) there is good cause for the failure to have presented the evidence." *Lopez*, 2022 WL 832028, at *2.  Plaintiff cannot satisfy this standard.

First, the subsequent favorable decision is not new evidence—it is a conclusion based on evidence.  *See, e.g.*, *Caron*, 600 F. App'x at 44; *Polynice*, 576 F. App'x at 31; *Lopez*, 2022 WL 832028, at *2; *see generally Horn v. Comm'r of Soc. Sec.*, No. 13-CV-1218 NGG, 2015 WL 4743933, at *22 n.9 (E.D.N.Y. Aug. 10, 2015) (explaining "the case law reflects doubt that a subsequent favorable decision can be considered new evidence for sixth-sentence purposes") (collecting cases).

Second, the subsequent favorable decision is not material because it does not concern Plaintiff's condition during the relevant time period.  *See, e.g.*, *Hairston-Scott*, 2021 WL 3777581, at *2; *Caron*, 600 F. App'x at 44; *Polynice*, 576 F. App'x at 31.  "Evidence that is material must be both (1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative."  *Lopez*, 2022 WL 832028, at *2; *see also Hairston-Scott*, 2021 WL 3777581, at *2.  The relevant time period here is April 16, 2019, the date Plaintiff filed her claim, to April 16, 2020, the date of the ALJ's decision.  *See supra*, note 3. The subsequent favorable decision concerned Plaintiff's condition from January 12, 2021,

forward.  (*See* Dkt. No. 18 at 3.)  That decision is accordingly immaterial because it does not address Plaintiff's condition during the relevant time period at issue here.

For these reasons, remand is inappropriate under sentence six of 42 U.S.C. § 405(g).

**B.       Step Two Determination**

At step two of the five-step sequential evaluation process, the ALJ concluded Plaintiff had three severe impairments: anxiety disorder, depressive disorder, and personality disorder. (T. at 18-19.)  The ALJ further concluded Plaintiff's obesity, diabetes, and hypertension were not severe, and Plaintiff had no "medically determinable impairment regarding a formal learning disorder."  *See id.* at 19.  The ALJ then proceeded to step three, concluding none of Plaintiff's impairments or combination of impairments met or medically-equaled the listings.  *Id.* at 19-21. At step four, the ALJ determined Plaintiff's RFC.  *Id.* at 21-24.  In explaining his RFC determination, the ALJ discussed—among other things—Plaintiff's symptoms, diabetes, obesity, and "history of special education and presumed learning disability."  *See id.*  Based on Plaintiff's RFC, the ALJ concluded Plaintiff was not disabled.  *See id.* at 24-25.

Plaintiff claims the ALJ erred at step two by "not deeming her type 1 diabetes, hypothyroidism, and learning limitations to be severe impairments."  (Dkt. No. 17 at 22.) Plaintiff further claims the ALJ "erred by not including these impairments in formulating her RFC."  *Id.*   The Commissioner contends substantial evidence supports the ALJ's conclusion that Plaintiff's diabetes, hypothyroidism, and learning limitations were not severe.  (Dkt. No. 22 at 11-13.)  The Commissioner further argues any error the ALJ made at step two was harmless because the ALJ considered these impairments in his RFC determination.  *See id.*

The Court agrees with the Commissioner that any purported error the ALJ made at step two was harmless.  *See Reices-Colon*, 523 F. App'x at 798; *Bedasie v. Comm'r of Soc. Sec.*, No.

20-CV-4094 (MKB), 2022 WL 4326122, at *10-11 (E.D.N.Y. Sept. 17, 2022); *Stacy G. v. Berryhill*, No. 3:18-CV-143 (CFH), 2018 WL 6250790, at *5 (N.D.N.Y. Nov. 29, 2018).  "[T]he failure to find a specific impairment severe at step two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing []he adequately considered the evidence related to the impairment that is ultimately found non-severe."  *Stacy G.*, 2018 WL 6250790, at *5 (collecting cases); *see also Snyder v. Colvin*, No. 5:13-CV-585 (GLS) (ESH), 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) (explaining "when [the] functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error.").  Stated differently, "[w]here an ALJ excludes certain impairments from the list of severe impairments at step two of the sequential analysis, any such error is harmless if the ALJ identifies some severe impairments so that the analysis proceeds and the ALJ considers the effects of the omitted, non-severe impairments during the subsequent steps following step two."  *Bedasie*, 2022 WL 4326122, at *10 (collecting cases); *see, e.g., Reices-Colon*, 523 F. App'x at 798 (concluding any error the ALJ made at step two was harmless because the ALJ considered the effects of non-severe impairments when evaluating the claimant's RFC); *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (same); *Lebron v. Kijakazi*, No. 20-CV-9543 (KMK) (PED), 2022 WL 3910682, at *3 (S.D.N.Y. Aug. 31, 2022) (same).

Although the ALJ did not find Plaintiff's diabetes, hypothyroidism, and learning disabilities to be severe, he did address them in his RFC evaluation.  (*Compare* T. at 18-19, *with id.* at 21-24.)  The ALJ's RFC evaluation discusses Plaintiff's symptoms, diabetes, obesity, and

"history of special education and presumed learning disability." *See id.* at 21-24; *see also id.* at 19 (explaining the ALJ "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."). For example, the ALJ noted Plaintiff's obesity "reportedly effects [her] anxiety and depression," which had increased and "resulted in more withdrawal and isolation." *Id.* at 22. The ALJ discussed Plaintiff's diabetes, noting she "becomes more irritable when sugar levels are off," and one acceptable medical source indicated her "diabetes could also effect [her] reported symptomology and associated mood changes." *Id.* at 22-23. The ALJ discussed the evidence of Plaintiff's learning disability, noting her "adult intelligence testing resulted in low average full-scale IQ," and her "[a]cademic achievement scores were considered borderline." *Id.* at 22. In this Court's judgment, this RFC evaluation adequately considered the available evidence related to Plaintiff's diabetes, hypothyroidism, and learning disabilities. *See Stacy G.*, 2018 WL 6250790, at *5; *Snyder*, 2014 WL 3107962, at *5. Any error the ALJ made at step two of his five-step sequential evaluation was accordingly harmless. *See, e.g.*, *Reices-Colon*, 523 F. App'x at; *Stanton v. Astrue*, 370 F. App'x at 233 n.1; *Lebron*, 2022 WL 3910682, at *3.

### C.    Medical Opinion Evidence

Five acceptable medical sources offered medical opinions in this case: (1) consultative examiner Brett T. Hartman, Psy.D.; (2) state agency medical examiner J. Rosenthal, M.D.; (3) state agency psychiatric examiner S. Hennessey, Ph.D.; (4) state agency medical examiner R. Reynolds, M.D.; and (5) state agency psychiatric examiner M. Momot-Baker, M.D. (*See* T. at 126-27 (Dr. Rosenthal's opinion, dated Jun. 25, 2019); 127-34 (Dr. Hennessey's opinion, dated Jul. 29, 2019); 144 (Dr. Reynolds' opinion, dated Oct. 11, 2019), 145-53 (Dr. Momot-Baker's opinion, dated Oct. 17, 2019), 590-94 (Dr. Hartman's opinion, dated Jun. 15, 2019).) The ALJ

appears to have concluded that each state agency examiner's opinion was persuasive,[4] but was unpersuaded by Dr. Hartman's opinion that Plaintiff had marked to extreme mental limitations. *See id.* at 19, 23-24.  Plaintiff challenges the ALJ's evaluation of Dr. Hartman's opinion.  (*See* Dkt. No. 17 at 19-20.)

### 1. Legal Standard

For Supplemental Security Income claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence and prior administrative medical findings is governed by 20 C.F.R. § 416.920c.  *See* 20 C.F.R. § 416.920c; *see also Schillo*, 31 F.4th at 71 n.1.  Under this regulation, applicable here, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 416.920c(a); *see also Schillo*, 31 F.4th at 71 n.1; *Howard D. v. Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021).  Rather, the ALJ must use five factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim."  20 C.F.R. §§ 416.920c(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

---

[4] The ALJ only evaluated the persuasive value of three medical opinions at step four of the five-step sequential evaluation process: Dr. Hartman's opinion, Dr. Momot-Baker's opinion, and Dr. Hennessey's opinion.  (*See* T. at 23-24.)  The ALJ did not evaluate the persuasive value of Dr. Rosenthal's opinion or Dr. Reynolds' opinion at this step.  *See id.* at 21-24.  Rather, at step two, the ALJ stated, "both Dr. Reynolds and Dr. Rosenthal consistently provided relatively recent *persuasive opinions* outlining the claimant's diabetes and thyroid impairments as non-severe." *Id.* at 19 (emphasis added).  The ALJ accordingly appears to have concluded—at step two—that these opinions were persuasive.  *See id.*  Plaintiff does not challenge this conclusion.  (*See* Dkt. No. 17.)

The two most important factors in this analysis are supportability and consistency.  20 C.F.R. § 416.920c(b)(2); *see also Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022). The ALJ is specifically required to "explain how [h]e considered the supportability and consistency factors" when determining the persuasiveness of "a medical source's medical opinions or prior administrative medical findings."  20 C.F.R. § 416.920c(b)(2); *Loucks*, 2022 WL 2189293, at *1; *see generally Jackson*, 2022 WL 620046, at *18 ("It is not sufficient to cite to some objective medical evidence in the record and simply conclude that an opinion is consistent with other evidence in the file rendering it persuasive." ). "If the ALJ fails adequately to explain the supportability or consistency factors, or bases [his] explanation upon a misreading of the record, remand is required."  *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see, e.g.*, *Loucks*, 2022 WL 2189293, at *2 (remanding where "the ALJ committed [harmful] procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"); *Jackson*, 2022 WL 620046, at *18-20 (remanding because the ALJ misread the record and did not adequately explain his evaluation of the supportability and consistency factors in light of the relevant evidence).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanations," the "more persuasive" it will be.  20 C.F.R. § 416.920c(c)(1); *see also Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.").  Under the

13

consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 416.920c(c)(2); *see also White v. Comm'r of Soc. Sec.*, No. 20 CIV. 6222 (SLC), 2022 WL 951049, at *5 (S.D.N.Y. Mar. 30, 2022) ("Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."); *see generally* 20 C.F.R. § 416.920b(b) ("We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion."  *Howard D.*, 2021 WL 1152834, at *11; *see also* 20 C.F.R. §§ 416.920c(a), (b)(2).  However, where the ALJ has found two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors.  20 C.F.R. § 416.920c(b)(3); *see also Acheampong v. Comm'r of Soc. Sec.*, 564 F. Supp. 3d 261, 267 (E.D.N.Y. 2021).

### 2.    Dr. Hartman's Opinion and the ALJ's Evaluation

Dr. Hartman conducted an in-person psychiatric evaluation on June 14, 2019.  *See id.* at 590-94.  His medical opinion, issued the same day, outlines Plaintiff's psychiatric history, medical history, and symptoms.  *See id.* at 590-91.  The opinion also documents the results of Plaintiff's mental status examination, noting: (i) Plaintiff was "cooperative yet quite anxious;" (ii) her "[t]hought processes were coherent and goal-directed;" (iii) her affect was anxious and her mood nervous; (iv) she was "alert and oriented;" (v) her "[a]ttention and concentration

appeared to be mildly impaired;" (vi) she could count "without difficulty, but she made errors on the calculations and serial 7s;" (vii) her "recent and remote memory skills appeared to be generally intact" because she "could recall 3 of 4 objects immediately and 3 of 4 after five minutes" and she could "perform 6 digits forward and 3 backward;" and (viii) her "[i]ntellectual functioning appeared to be in the borderline to deficient range with a borderline general fund of information." *See id.* at 591-92.

Based on his evaluation, Dr. Hartman concluded Plaintiff: (i) was "able to understand, remember, and apply simple directions;" (ii) was "able to maintain personal hygiene and maintain awareness of hazards;" (iii) had "moderate difficulty sustaining an ordinary routine;" (iv) had "moderate to marked difficulty using reason and judgment," and "sustaining concentration;" (v) had "marked difficulty understanding, remembering, and applying complex directions," and "interacting adequately with others;" and (vi) had "marked to extreme difficulty regulating her emotions." *Id.* at 593; *see generally* 20 C.F.R. §§ 416.920a(c)(3)-(4) (explaining the "four broad functional areas in which [the Commissioner] will rate the degree of your functional limitation" and the five-point scale used to "rate your degree of limitation in these areas"); 20 C.F.R. § Pt. 404, subpt. P, App'x 1, 12.00(F)(2) (defining each point on the five-point rating scale, ranging from "No limitation" to "Extreme limitation").

The ALJ concluded Dr. Hartman's opinion that Plaintiff had "marked to extreme limitations" in her mental functional capacity was "not persuasive at all." (T. at 23, 593.) First, the ALJ found Dr. Hartman's conclusion that Plaintiff had "moderate to marked difficulty sustaining concentration" to be inconsistent with evidence that Plaintiff "remained cooperative during the examination, [her] thought processes were coherent and goal-directed, and [her] attention and concentration were only mildly impaired." *Id.* at 23.  The ALJ also found this

conclusion to be inconsistent with evidence Plaintiff "reads, and was able to pass the required

testing to obtain a driver's license permit." *Id.* Second, the ALJ found Dr. Hartman's conclusion

that Plaintiff had "marked difficulty interacting adequately with others" to be inconsistent with

evidence Plaintiff had a good friend and "gets along well with her mother." *Id.* Third, the ALJ

found Dr. Hartman's conclusion that Plaintiff had "marked to extreme difficulty regulating her

emotions" to be inconsistent with the absence of evidence Plaintiff was "angered, crying, or even

upset within this setting." *Id.* He also found this conclusion inconsistent with treatment records

noting "behavior that is generally within normal limits" and evidence that Plaintiff "fail[ed] to

engage in any regular or routine mental health therapy or counseling." *Id.*

> **3. The ALJ Erred**

The ALJ erred in evaluating the medical opinion of Dr. Hartman because he failed to

address the supportability factor, *see* 20 C.F.R. § 416.920c(b)(2), and substantial evidence does

not support his evaluation of the consistency factor, *see Tejada*, 167 F.3d at 773.

> *i. Supportability*

"The supportability factor asks how well a medical source supported their opinion(s) with

objective medical evidence and supporting explanations." *Carmen M.*, 2021 WL 5410550, at *4;

*see also* 20 C.F.R. § 416.920c(c)(1). This Court has treated a claimant's difficulty with simple

calculations and serial 3s as objective medical evidence[5] that the claimant's attention and

concentration abilities were limited. *See, e.g.*, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361-62

(N.D.N.Y. 2016) (concluding the claimant's difficulty with simple calculations and serial 3s

---

[5] "Objective medical evidence means signs, laboratory findings, or both." 20 C.F.R.
§ 416.902(k); *see also id.* at § 416.902(g) (defining laboratory findings); *id.* at § 416.902(l)
(defining signs); *see generally* SSR 16-3P, 2017 WL 5180304, at *5 (Oct. 25, 2017) (discussing
the consideration of objective medical evidence).

supported Dr. Loomis' determination that the claimant had limited ability to maintain attention and concentration); *Teneyck v. Colvin*, No. 1:12-CV-0308 (MAD), 2014 WL 975597, at *5 (N.D.N.Y. Mar. 12, 2014) (remanding for the ALJ to consider new evidence—including evidence that she had difficulty with simple calculations and serial 3s—that "shed considerable new light on the seriousness of Plaintiff's condition and present[s] a reasonable probability of influencing the Commissioner to decide [claimant's] application differently."); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 268 (N.D.N.Y. 2013) (concluding the ALJ erred in not giving significant weight to Dr. Moore's opinion that the claimant's "attention and concentration were impaired" where "Dr. Moore found that [the claimant] was able to count but made simple calculation errors and could not do serial 3s."); *Dufresne v. Astrue*, No. 5:12-CV-00049 (MAD) (TWD), 2013 WL 1296376, at *4, 10 (N.D.N.Y. Mar. 8, 2013), *report and recommendation adopted*, 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013) (remanding where the ALJ "failed to explain his reasoning for affording little weight" to the Dr. Barry's opinion that the claimant's attention and concentration were impaired because, among other reasons, "he struggled with even simple calculations and could not do serial 3s.").

Here, Dr. Hartman supported his opinion that Plaintiff had "moderate to marked difficulty sustaining concentration" with evidence she "made errors on the calculations and serial 7s" during her mental status examination.  (*See* T. at 591-92.)  Dr. Hartman explained his opinion appeared to be consistent with Plaintiff's documented psychiatric problems and learning deficits.  *Id.* at 593.  The ALJ failed to engage with this evidence and this explanation—he did not address the supportability factor when evaluating Dr. Hartman's opinion.  (*Compare* T. at 23, *with* 20 C.F.R. § 416.920c(b)(2).)  The ALJ found crucial aspects of Dr. Hartman's opinion to be "not persuasive at all" without considering evidence Plaintiff "made errors on the calculations

and serial 7s" during her mental status examination.  (*See* T. at 23, 593.)  The ALJ also failed to address Dr. Hartman's explanation that his results "appear[ed] consistent with psychiatric problems and learning deficits that would significantly interfere with [Plaintiff]s functioning." *See id.*

Remand is required because the ALJ failed to evaluate Dr. Hartman's opinion under the supportability factor, and a searching review of the record does not assure the Court that the substance of the regulation was not traversed.  *See Rivera*, 2020 WL 8167136, at *14; *see, e.g., Loucks*, 2022 WL 2189293, at *2 (remanding where "the ALJ committed [harmful] procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"); *Jackson*, 2022 WL 620046, at *18-20 (remanding because the ALJ misread the record, and did not adequately explain his evaluation of the supportability and consistency factors in light of the relevant evidence); *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1085 (TWD), 2021 WL 5903286, at *8 (N.D.N.Y. Dec. 14, 2021) (remanding where the ALJ "failed to explain how he considered the supportability factor when considering the persuasive value" of three medical opinions).

### ii.     Consistency

The consistency factor measures whether a medical opinion (or a portion thereof) is consistent with medical and nonmedical evidence in a claim—it "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."  *See White*, 2022 WL 951049, at *5; *see also* 20 C.F.R. § 416.920c(c)(2).  The ALJ failed to engage in this all-encompassing inquiry, and substantial evidence does not support his conclusion that Dr. Hartman's opinion is inconsistent with the evidence of record.  (*Compare* T. at 23, *with* 20 C.F.R. § 416.920c(c)(2) ("The more consistent a medical opinion(s) . . . . is with the evidence

from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").)  Furthermore, the Court finds the rationale and evidentiary standards used by the ALJ when evaluating Dr. Hartman's opinion under the consistency factor to be unpersuasive and unsupported by the regulations.

First, the ALJ devalued Dr. Hartman's conclusion that Plaintiff had moderate to marked difficulty sustaining concentration based on three pieces of evidence: (1) Plaintiff's mental status examination from June 14, 2019; (2) Plaintiff's ability to read; and (3) Plaintiff's possession of a driver's license learner's permit.  (*See* T. at 23.)  The ALJ concluded Dr. Hartman's opinion about Plaintiff's ability to sustain concentration was "not persuasive at all" because it was inconsistent with this evidence.  *Id.*  The undersigned is unpersuaded that an individual's capacity to read necessarily means she cannot have marked limitations in her ability to sustain concentration.  (*But see* T. at 23.)  The ability to read and understand this opinion might suggest an individual can sustain concentration, but the basic ability to read words on a page, without more, does not.  The undersigned is similarly unconvinced that an individual's capacity to obtain a driver's license permit necessarily means she will have no marked limitations in her ability to sustain concentration.  *But see id.*  The ability to pass a written examination might suggest that a claimant can sustain concentration, but the ALJ collected no evidence about Plaintiff's preparation for the drivers' license permit examination or the examination itself—like how it was conducted or whether Plaintiff received any accommodations.  *See generally id.* at 32-64.

The ALJ's remaining critique of Dr. Hartman's opinion concerning Plaintiff's ability to sustain concentration relies on Dr. Hartman's own statement that Plaintiff's "[a]ttention and concentration appeared to be mildly impaired."  *See id.* at 23, 592.  As the ALJ noted in his decision, this statement is inconsistent with Dr. Hartman's ultimate conclusion about Plaintiff's

ability to sustain concentration.  *See id.*  However, Dr. Hartman collected additional evidence

that supports his ultimate conclusion.  *See id.* at 590-94.  For example, Dr. Hartman indicated

Plaintiff took special education classes throughout her schooling, she did not receive a GED,

"she believe[d] that although she made it to the 11th grade her curriculum was at a 4th grade

level," "she made errors on the calculations and the serial 7s," and her "[i]ntellectual functioning

appeared to be in the borderline to deficient range with a borderline general fund of

information."  *See id.* at 590-92.  Other evidence in the record supports the conclusion that

Plaintiff has moderate to marked limitations in her ability to sustain concentration, including: (i)

Plaintiff's own statements that she has difficulty sustaining concentration, *id.* at 265; (ii) ADHD

diagnoses from multiple healthcare providers, *id.* at 457, 459, 463, 466, 598, 634, 645, 660; (iii)

statements from her grandmother about her limited ability to complete chores at home and

function in school, *id.* at 271-72; (iv) Dr. Hennessey's conclusion that Plaintiff's "borderline

range academic achievement standard scores appear roughly consistent with a specific learning

disorder," *id.* at 134; and (v) school records indicating her ability to pay attention was "too far

below average," *id.* at 369.  This evidence far outweighs Dr. Hartman's observation that on one

day—June 14, 2019—Plaintiff's attention and concentration "*appeared* to be mildly impaired."

*See id.* at 592 (emphasis added).  Substantial evidence accordingly does not support the ALJ's

conclusion that Dr. Hartman's opinion concerning Plaintiff's ability to sustain concentration was

inconsistent with the evidence of record.  *See id.* at 23; *see also* 20 C.F.R. § 416.920c(c)(2).

Second, the ALJ discounted Dr. Hartman's conclusion that Plaintiff had "marked

difficulty interacting adequately with others" because she had one good friend and "gets along

well with her mother."  (T. at 23.)  The ALJ accordingly concluded Dr. Hartman's opinion that

Plaintiff had "marked difficulty interacting adequately with others" was inconsistent with the

record.  *See id.*  According to the ALJ, because Plaintiff has a single friend and gets along well with her mother, she must not have marked difficulty interacting adequately with others.  *See id.* The undersigned is unpersuaded by this reasoning.  An individual who can adequately interact with only two people is "seriously limited" in her ability to "independently, appropriately, and effectively" interact with others.  *See* 20 C.F.R. § Pt. 404, subpt. P, App'x 1, 12.00(F)(2)(d) (defining "Marked limitation").

Moreover, as the ALJ acknowledged in his decision, Plaintiff testified she "stopped being friends" with the only friend she had because the friend "was causing [her] more anxiety."  (*See* T. at 24, 48.)  A key factual predicate for the ALJ's rationale (i.e., that Plaintiff had a friend) is accordingly erroneous.  *Compare id. with id.* at 23.  Moreover, substantial evidence indicates Plaintiff had difficulty adequately interacting with others, including: (i) social phobia diagnoses from various healthcare providers, *id.* at 373, 413, 415, 420-21, 424, 433, 435, 437, 531, 534, 538, 542, 548, 598, 621; (ii) statements from Plaintiff that she is anti-social, "hate[s] people," and only gets along with her mother, *id.* at 43, 48, 262, 264, 308, 413; (iii) a history of assaulting others, *id.* at 49-50, 266, 269-70, 363; and (iv) statements from her sister and grandmother that she only gets along with her mother, *id.* at 269, 271.  This evidence suggests Plaintiff's ability to interact with others was "seriously limited." *See* 20 C.F.R. § Pt. 404, subpt. P, App'x 1, 12.00(F)(2)(d); *see also* T. at 593.  Substantial evidence accordingly does not support the ALJ's conclusion that Dr. Hartman's opinion about Plaintiff's ability to interact with others was inconsistent with the evidence of record.  (*Compare* T. at 593, *with id.* at 23.)

Third, the ALJ rejected Dr. Hartman's conclusion that Plaintiff had "marked to extreme difficulty regulating her emotions" based on: (1) the absence of evidence Plaintiff was "angered, crying, or even upset within this setting;" (2) treatment records indicating Plaintiff's behavior

was "generally within normal limits;" and (3) the fact that Plaintiff "fail[ed] to engage in any regular or routine mental health therapy or counseling." (T. at 23.) It is unclear what setting the ALJ was referring to when he observed that Plaintiff was not "angered, crying or even upset within this setting," but the absence of evidence that Plaintiff was not actively presenting certain emotions in a specific setting is not evidence of the absence of a disabling mental health impairment. *Accord Virgen C. v. Berryhill*, No. CV 16-480 (WES), 2018 WL 4693954, at *2 (D.R.I. Sept. 30, 2018) (faulting the ALJ for "divin[ing] contradiction out of thin air, interpreting an absence of evidence as evidence of absence."); *Rivera v. Colvin*, No. 6:12-CV-02132 (MO), 2013 WL 6002445, at *4 (D. Or. Nov. 12, 2013) (explaining "where subjective symptoms are concerned, absence of evidence is not evidence of absence."). Evidence that an individual was angry, crying, or upset in a given setting may be relevant to demonstrate a disabling impairment, but the regulations do not make it necessary. *See generally* 20 C.F.R. § Pt. 404, subpt. P, App'x 1, 12.00(C) (discussing the evidence used to evaluate a mental disorder). The issue here is consistency, and the Commissioner considers evidence to be inconsistent "when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 416.920b(b). Under this definition of inconsistency, the lack of certain evidence does not necessarily give rise to an adverse inference of inconsistency. *See id.* It was error for the ALJ to conclude otherwise. *Compare id. with* T. at 23.

The ALJ also points to the fact that Plaintiff does not obtain regular mental health counselling as evidence she does not have marked to extreme difficulty regulating her emotions. (*See* T. at 23.) "[F]aulting a person with diagnosed mental illness for failing to pursue mental health treatment is a questionable practice." *Austin v. Com'r of Soc. Sec.*, No. 5:14-CV-0177

(GTS), 2015 WL 3504886, at *8 (N.D.N.Y. June 3, 2015); *see also Fernandez v. Comm'r of Soc. Sec.*, No. 19-CV-2294 (LDH), 2020 WL 6746832, at *9 (E.D.N.Y. Nov. 16, 2020) ("While it may be appropriate in some circumstances to deem a plaintiff less credible for failing to seek medical treatment, faulting a person with diagnosed mental illness for failing to pursue mental health treatment, would be, at best, a questionable practice.") (collecting cases); *Kent v. Saul*, No. 19-CV-097 (MJR), 2020 WL 4581693, at *3 (W.D.N.Y. Aug. 10, 2020) (same).

Plaintiff testified she was looking for a therapist, but had "trouble trusting people," so she "want[ed] to find someone who actually, actually [she] can trust." *See id.* at 55-56. Plaintiff also has a long history of unemployment, which suggests she may not have reliable access to counseling. *See generally id.* at 249-58, 285-91, 336-43. Plaintiff's long-term unemployment, trust issues, stunted intellectual development, dependence on her mother for scheduling appointments, and various diagnosed mental impairments may account for her failure to obtain regular mental health counselling. *See id.* at 18, 39-40, 54-55, 249-58, 260, 285-91, 336-43, 373, 413, 415, 420-21, 424, 433, 435, 437, 453, 456-57, 459, 463, 531, 534, 538, 542, 548, 591, 598, 621; *see also Volkow v. Comm'r of Soc. Sec.*, No. 1:18-CV-6602 (FB), 2020 WL 5211041, at *1 (E.D.N.Y. Sept. 1, 2020) ("There are myriad reasons why individuals do not seek treatment despite debilitating mental impairments: the excessive cost of treatment, the stigma associated with mental illness, the side effects of psychiatric medications . . . amongst numerous others."); *accord* SSR 16-3P, 2017 WL 5180304, at *9-10 (listing factors the Commissioner may consider when evaluating a claimant's treatment history, including whether the claimant: (a) "structured his or her activities to minimize symptoms;" (b) is not "able to afford treatment and may not have access to free or low-cost medical services;" or (c) "may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment."). The ALJ's failure

to consider these facts when drawing an adverse inference against Plaintiff constituted legal error.  *See Volkow*, 2020 WL 5211041, at *1; *Hughes v. Colvin*, No. 15-CV-181 (WMS), 2017 WL 1088259, at *6 (W.D.N.Y. Mar. 23, 2017).  It also belies the instruction that "the Social Security Act is a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion."  *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983); *accord* SSR 16-3P, 2017 WL 5180304, at *9-10.

What is left of the ALJ's critique of Dr. Hartman's opinion about Plaintiff's ability to regulate her emotions is the ALJ's observation that treatment notes indicate her behavior was "generally within normal limits."  (*See* T. at 23.)  The ALJ provides no record citation for this observation.  *See id.*  Several treatment notes from the relevant time period document Plaintiff's depression, anxiety, and diminished insight and judgment.  *See id.* at 617, 619, 621, 645, 660, 680, 683, 599-601.  Coupled with Plaintiff's history of assaulting others and her various mental health diagnoses, this evidence suggests Plaintiff has difficulty regulating her emotions.  Substantial evidence accordingly does not support the ALJ's conclusion that Dr. Hartman's opinion about Plaintiff's ability to regulate her emotions was inconsistent with the evidence of record.

In sum, the ALJ improperly evaluated the consistency factor when weighing the persuasive value of Dr. Hartman's opinion.  (*See* T. at 23; *see generally* 20 C.F.R. § 416.920c(c)(2).)  The ALJ's evaluation of the consistency factor employed reasoning and evidentiary standards this Court finds unpersuasive and unsupported by the regulations.  (*See generally* T. at 23.)  Moreover, substantial evidence does not support his conclusion that Dr. Hartman's opinion was inconsistent with evidence in the record.  *See Tejada*, 167 F.3d at 773.  These errors warrant remand.

**D.      Symptom Evidence**

To determine a claimant's residual functional capacity, the ALJ must consider "all of the relevant medical and other evidence," "including limitations that result from . . . symptoms."  20 C.F.R. §§ 416.945(a)(3), (d); *see also* 20 C.F.R. § 416.929(c); SSR 16-3P, 2017 WL 5180304, at *12.  The ALJ's evaluation of a claimant's symptoms in turn requires the ALJ to consider medical opinion evidence.  *See* 20 C.F.R. §§ 416.929(c)(3)-(4) (requiring the ALJ to consider evidence from medical sources when evaluating the intensity, persistence, and limiting effects of symptoms); SSR 16-3P, 2017 WL 5180304, at *6-7.  When the ALJ conducts a flawed evaluation of medical opinion evidence, it necessarily impacts the ALJ's evaluation of symptoms.  *See* 20 C.F.R. §§ 416.929(c)(3)-(4); *see also, e.g.*, *Anne F. v. Saul*, No. 8:19-CV-774 (TJM), 2020 WL 6882777, at *13 (N.D.N.Y. Nov. 24, 2020) (concluding the ALJ's flawed evaluation of medical opinion evidence rendered the evaluation of the claimant's symptoms "necessarily flawed"); *Christopher B. v. Saul*, No. 8:19-CV-00905 (BKS), 2020 WL 5587266, at *19 (N.D.N.Y. Sept. 18, 2020) (same).  A flawed evaluation of medical opinion evidence also impacts the ALJ's assessment of a claimant's residual functional capacity.  *See* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence"); *see also, e.g.*, *Rodriguez v. Colvin*, No. 3:14-CV-1552 (CFH), 2016 WL 1275647, at *7 (N.D.N.Y. Mar. 31, 2016) ("Because the ALJ erred in awarding significant weight to Dr. Bacalla's opinion, the ALJ's RFC assessment is necessarily flawed."); *Mortise v. Astrue*, 713 F. Supp. 2d 111, 127 (N.D.N.Y. 2010) (concluding errors in the ALJ's evaluation of medical opinion evidence rendered the RFC "necessarily flawed.").

Here, the ALJ denied Plaintiff's claim at step five, concluding she had sufficient residual functional capacity to perform work in the national economy.  (T. at 24-25.)  However, the ALJ's

errors in evaluating the medical opinion of Dr. Hartman necessarily influenced his evaluation of Plaintiff's symptoms.  *See* 20 C.F.R. §§ 416.929(c)(3)-(4); *see also, e.g.*, *Anne F.*, 2020 WL 6882777, at *13.  Those errors also influenced the ALJ's evaluation of Plaintiff's residual functional capacity.  *See* 20 C.F.R. § 416.945(a)(3); *see also, e.g.*, *Rodriguez*, 2016 WL 1275647, at *7.  Remand is accordingly warranted.  *Anne F.*, 2020 WL 6882777, at *13; *Rodriguez*, 2016 WL 1275647, at *7.

## IV.   CONCLUSION

Considering the foregoing, the Court finds the Commissioner's decision was not based upon correct legal standards and substantial evidence does not support the Commissioner's decision.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 22) is **DENIED**; and it is further

**ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED**.

Dated:      November 7, 2022
             Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge